## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

GERARD POWELL,

        Plaintiff,                           Case No.

v.                                              Hon.

GEORGIA-PACIFIC, LLC
A Foreign Limited Liability Company,

        Defendant.

_____

**ANGELA L. WALKER (P67625)**
**NACHT, ROUMEL, SALVATORE,**
**BLANCHARD & WALKER, P.C.**
Attorney for Plaintiff
101 N. Main Street, Ste. 555
Ann Arbor, MI 48104
(734) 663-7550
jsalvatore@nachtlaw.com

_____

## COMPLAINT AND JURY DEMAND

      NOW COMES Plaintiff, GERARD POWELL, by and through his attorneys, NACHT,

ROUMEL, SALVATORE, BLANCHARD & WALKER, P.C., and hereby complains of

Defendant, GEORGIA-PACIFIC, LLC, as follows:

## PARTIES AND JURISDICTION

      1.     Plaintiff, Gerard Powell ("Plaintiff" or "Mr. Powell") is a resident of Jackson,

Michigan in the County of Jackson.

      2.     Defendant, Georgia-Pacific, LLC ("Defendant" or "the Plant") is a foreign profit

corporation incorporated and doing business in Oakland County, Michigan.  Defendant is

headquartered in Atlanta, Georgia and is one of the world's leading manufacturers and marketers of tissue, packaging, paper, pulp, and building products and related chemicals.

3.      Claims in this action include Family and Medical Leave Act ("FMLA") violations, ERISA interference, age discrimination under the Elliott-Larsen Civil Rights Act, and disability discrimination under Michigan's Persons with Disabilities Civil Rights Act.

4.      This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. § 1331 and over state law claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in the Eastern District pursuant to 28 U.S.C. §1391, as it is the district in which both parties reside.

## GENERAL ALLEGATIONS

6.      Mr. Powell is a 47-year-old male.

7.      Mr. Powell was hired by Defendant on January 17, 2005 to work as a production employee in Defendant's Albion, Michigan plant.

8.      During the course of his employment, Mr. Powell overheard discriminatory comments made by supervisors such as "The old guys can't keep up around here" and "If I had my way, there would be no FMLA leave."

9.      Furthermore, Mr. Powell observed what appeared to be a pattern and practice of discrimination against older employees and employees with serious health problems who sought to take FMLA leave.

10.     In early 2009, Mr. Powell began experiencing symptoms such as frequent diarrhea, severe stomach pain, and significant weight loss.

11.     At this point in time, Mr. Powell had an undiagnosed serious health condition.

12.     Mr. Powell initially attributed his symptoms to stress.

13.     Because Mr. Powell thought his symptoms were stress-related, he made an appointment to see his psychiatrist.

14.     Prior to attending his appointment, in mid-March of 2009, Mr. Powell informed his supervisor that he was going to see a doctor and if anything was seriously wrong with him he intended to take FMLA leave.

15.     Mr. Powell's psychiatrist did not find anything wrong with Mr. Powell that would explain his symptoms, so Mr. Powell continued to work in his regular fashion all the while experiencing increasing stomach pain.

16.     On March 24, 2009, Mr. Powell received an unjustified written warning for "substandard work" and "failure to follow instructions."

17.     As part of his write-up, Mr. Powell was suspended for three days – Tuesday, March 31; Wednesday, April 1; and Thursday, April 2.

18.     On the night of March 30, 2009, Mr. Powell called off of work due to illness.  At this point in time, he still had an undiagnosed serious health condition.

19.     For approximately one month prior, Mr. Powell had been experiencing increasing stomach pain and chronic diarrhea.

20.     Mr. Powell's supervisor and co-workers were aware of his symptoms.

21.     On March 31, 2009 (the first day of Mr. Powell's suspension), Mr. Powell went to see his primary care physician about his stomach pain.

22.     Mr. Powell's primary care physician recommended that he undergo a colonoscopy in order to determine the source of his stomach pain.

23.     The colonoscopy was scheduled for Friday, April 3, 2009.

24.     Because the anesthesia used during a colonoscopy restricts driving and the operation of machinery for 24 hours following the procedure, Mr. Powell called Human Resources on March 31, to inform them that he would need to take a day off for the colonoscopy.

25.     During this phone call, Mr. Powell explained that he had a medical reason for absence and inquired as to whether he would be penalized for missing work under the company's no-fault attendance policy.  The Human Resources manager informed Mr. Powell that he would, indeed, be penalized for the absence.

26.     On Friday, April 3, 2009, Mr. Powell underwent the colonoscopy.

27.     A short time after the procedure, Mr. Powell received a diagnosis from his doctor: he had a malignant tumor (colon cancer).

28.     The doctor who performed the colonoscopy scheduled Mr. Powell for a CT scan, advised him to see his primary care physician, and recommended a surgery consult and surgery as soon as possible.  In addition, a follow-up appointment with the doctor who performed the colonoscopy was scheduled to take place ten days later.

29.     Mr. Powell's girlfriend contacted Defendant on Friday, April 3, 2009 and advised the plant manager that Mr. Powell would not be in that night.  She also advised the plant manager that Mr. Powell had a "work leave" slip through April 17, 2009.  She then faxed the work leave slip to the plant manager.

30.     The work leave slip specifically included a request for FMLA paperwork.

31.     Later that same afternoon, Mr. Powell called the plant himself and spoke directly to the first shift supervisor to inform him of his cancer diagnosis and to let him know that he would not be in that night.

32.     The first shift supervisor agreed to let HR know that Mr. Powell needed FMLA paperwork sent to him as he would be off for the next two weeks.

33.     Mr. Powell then tried to call HR directly to request the FMLA paperwork.  There was no answer, so he left a detailed voice message confirming that he needed FMLA paperwork to be mailed to him.

34.     Mr. Powell received a message from HR later that day asking him to come into work on Monday, April 6 at 11:00 to "talk about the papers" he had faxed over.

35.     On Monday, April 6, 2009, the Human Resources Manager contacted Mr. Powell on his cell phone and told him that the plant manager was with her.  The plant manager then got on the telephone and informed Mr. Powell that he was being fired due to an alleged "quality issue."

36.     The plant manager did not provide any details about the alleged quality issue.

37.     The Human Resources Manager got back on the phone and stated that the termination was effective immediately.

38.     The entire conversation lasted less than five minutes.

39.     Mr. Powell never received anything in writing about the termination.

## COUNT I:  FMLA INTERFERENCE

40.     Plaintiff hereby realleges and incorporates by reference paragraphs 1-39 above.

41.     Defendant is an employer under the FMLA.

42.     Plaintiff was an eligible employee who was entitled to leave under the FMLA.

43.     Plaintiff gave notice to Defendant of his intent to take leave under the FMLA.

44.     Defendant interfered with Plaintiff's rights under the FMLA by terminating his employment to prevent him from taking FMLA leave.

45.     This course of conduct was a willful violation of the FMLA.

46.     As a result, Plaintiff was harmed, and continues to be harmed, in that he has suffered economic and non-economic loss, including but not limited to, lost wages, damage to professional reputation, emotional distress, outrage and humiliation.

## COUNT II:  FMLA RETALIATION

47.     Plaintiff hereby realleges and incorporates by reference paragraphs 1-46 above.

48.     Defendant is an employer under the FMLA.

49.     Plaintiff was an eligible employee who was entitled to leave under the FMLA.

50.     Plaintiff engaged in statutorily protected activity by requesting FMLA leave.

51.     Defendant discharged Plaintiff in retaliation for Plaintiff requesting FMLA leave.

52.     This course of conduct was a willful violation of the FMLA.

53.     As a result, Plaintiff was harmed, and continues to be harmed, in that he has suffered economic and non-economic loss, including but not limited to, lost wages, damage to professional reputation, emotional distress, outrage and humiliation.

## COUNT III:  ERISA INTERFERENCE

54.     Plaintiff hereby realleges and incorporates by reference paragraphs 1-53 above.

55.     Plaintiff was a member of medical and disability insurance plans through his employment with Defendant.

56.     Defendant engaged in prohibited conduct by terminating Plaintiff after receiving notice of his cancer diagnosis.

57.     Defendant's conduct was taken for the purpose of interfering with the attainment of ERISA-covered benefits to which Plaintiff was entitled as an employee of Defendant.

6

58.     As a result, Plaintiff was harmed, and continues to be harmed, in that he has suffered economic and non-economic loss, including but not limited to, lost wages, damage to professional reputation, emotional distress, outrage and humiliation.

### COUNT IV:  AGE DISCRIMINATION
### (Elliott-Larsen Civil Rights Act)

59.     Plaintiff hereby realleges and incorporates by reference paragraphs 1-58 above.

60.     Plaintiff was 45 years old at the time he was terminated.  Upon information and belief, Plaintiff was significantly older than other employees in the same position.

61.     Plaintiff was subjected to an adverse action when Defendant terminated him.

62.     Plaintiff was qualified for the position.

63.     Upon information and belief, Defendant hired a younger worker to fill the position.

64.     As a result, Plaintiff was harmed and continues to be harmed in that he has suffered economic loss, damage to his professional reputation, mental anguish, humiliation, and emotional distress.

### COUNT V:  DISABILITY DISCRIMINATION
### (Persons With Disabilities Civil Rights Act)

65.     Plaintiff hereby realleges and incorporates by reference paragraphs 1-64 above.

66.     At all relevant times, Plaintiff had a "disability" and/or was perceived to have a disability within the meaning of the Michigan Persons with Disabilities Civil Rights Act.

67.     Plaintiff's disability and/or perceived disability was unrelated to his ability to perform the duties of his particular job.

68.     Plaintiff was otherwise qualified to perform the requirements of his job with or without reasonable accommodation.

69.     Defendant's decision to discharge Plaintiff was motivated by Plaintiff's disability and/or in substantial part by assumptions and unreasonable perceptions of Plaintiff based on a perceived disability.

70.     As a result, Plaintiff was harmed, and continues to be harmed, in that he has suffered economic and non-economic loss, including but not limited to, lost wages, damage to professional reputation, emotional distress, outrage and humiliation.

WHEREFORE, Plaintiff respectfully requests that this Court award Plaintiff damages in an amount to be determined at trial together with costs, interest, attorney's fees, statutory penalties, and any other relief that this Honorable Court deems just and proper.

Respectfully submitted,
NACHT, ROUMEL, SALVATORE,
BLANCHARD & WALKER, P.C.

Dated: April 4, 2011                        s/ Angela L. Walker
                                            Angela L. Walker (P67625)
                                            Attorney for Plaintiff
                                            101 N. Main Street, Ste. 555
                                            Ann Arbor, MI 48104
                                            (734) 663-7550
                                            awalker@nachtlaw.com

## <u>DEMAND FOR JURY TRIAL</u>

NOW COMES Plaintiff, GERARD POWELL, by and through his attorneys, NACHT.

ROUMEL, SALVATORE, BLANCHARD & WALKER, P.C., and hereby demands a jury trial

in the above-captioned matter.

> Respectfully submitted,
> NACHT, ROUMEL, SALVATORE,
> BLANCHARD & WALKER, P.C.

Dated: April 4, 2011                    s/ Angela L. Walker
                                  Angela L. Walker (P67625)
                                  Attorney for Plaintiff
                                  101 N. Main Street, Ste. 555
                                  Ann Arbor, MI 48104
                                  (734) 663-7550
                                  awalker@nachtlaw.com